[Civ. No. 6176. First Appellate District, Division One.—January 30, 1928.]

CLARENCE D. SISTRUNK et al., Respondents, v. THE TEXAS HOLDING CO. (an Unincorporated Association), Appellant.

Oliver O. Clark and Charles R. Nelson for Appellant.

Newlin & Ashburn and R. L. Haight for Respondents.

PARKER, J., *pro tem.*—This is an appeal by defendant from a judgment rendered in favor of plaintiffs, following verdict of a jury. Included in the appeal is the order of the court below denying appellant's motion for a new trial.

The action is to recover damages resulting from injuries sustained by plaintiff Sistrunk through the alleged negligence of defendant. The plaintiffs Shaffer and Best are the employers of plaintiff Sistrunk and joined with him as such. No question is presented as to the rights of the employers in the event it is concluded that the employee is entitled to recover. Therefore, for the purposes hereof, the case will be treated as though the action had been commenced and prosecuted by the plaintiff Sistrunk alone.

The facts necessary to the determination of the questions presented are in the main undisputed. However, in outlining the case as made we do not mean that all of the facts stated are admitted. Our statement here necessarily takes as established the facts, sufficiently supported by evidence, which sustain the verdict, disregarding any conflict.

The plaintiff Sistrunk on February 24, 1923, was employed as a truck driver, engaged at his employment near Huntington Beach in Los Angeles County. About 8 o'clock P. M. of that date, after having delivered a load of pipe, he had withdrawn from the place of delivery and was with his trucks upon a public street or highway known as Crystal Avenue, in Huntington Beach. Suddenly without warning an explosion occurred, accompanied with flames of burning oil, enveloping the immediate vicinity. Before Sistrunk could remove himself his clothing took fire and he sustained the injuries here complained of.

At this point it becomes necessary to outline to some extent the general situation with reference to the territory named. The Huntington Beach oil field is located on property subdivided into town lots. The leases are small and wells are numerous and close together. The property of defendant was and is surrounded by other leases, wells, and drilling outfits owned and operated by persons and companies other than the defendant. The area of each lease was approximately 300 feet by 145 feet, and some smaller. In the one city block here concerned there were operating five oil leases on one side of the street and three explorations on the other side.

The Texas Holding Company operated three of the leases, though here we are concerned with but one, and hereafter such reference as may be made to the property of that company will be exclusive of all but the one, namely, the one adjoining what is called hereinafter the Moore lease. The Moore lease is another town-lot oil well and immediately adjoins the property of defendant on the north.

On the property of defendant Texas Holding Company at a point some thirty feet south of the Moore lease there had been erected and were standing at the times here in point two large oil tanks and also an open sump. There was oil in both the sump and the tanks, and the oil in the tanks either had been or was being heated at the time. Further the evidence disclosed the premises of defendant to have been maintained in a careless manner, with rubbish, old lumber, waste, etc., scattered about. In addition, the ground around the tanks and sump was oil-saturated, and here and there near the highway were formed small pools of oil lying on the surface.

Coming, then, to the night in question it is in evidence that there was an open fire on the Moore lease some fifty feet from the sump and tanks, and that this fire was wholly without the control of defendant Texas Holding Company and not on property owned by it. About 10:30 on that night the fire occurred, and the testimony of many witnesses is in accord to the effect that there was a sudden flare of light and an almost instantaneous explosion, followed by fire in all directions. The explosion occurred upon defendant's premises; the fire started on defendant's premises; the oil was seen by several of the witnesses to have run directly

from the tanks in question, which were being maintained upon defendant's land, across the road and on to and under the truck in which plaintiff was sitting and which truck was then on the public highway. The testimony further shows that oil was thrown by the explosion from the tanks of defendant into the adjoining street, setting fire to the clothing of plaintiff as aforesaid.

As indicated hereinbefore, a conflict exists as to just where the fire started, and as to just how long afterward the explosion resulted. However, there is abundant testimony establishing the fact that the fire started right at or between the tanks and that the fire and explosion were practically simultaneous.

On this state of facts appellant contends: (1) That the verdict and judgment stand unsupported by the evidence; (2) That the verdict is contrary to the evidence and the law; (3) That the court erred in giving certain instructions to the jury; (4) That the court erred in refusing to give certain instructions requested by defendant.

(1) The testimony taken as a whole shows that the defendant's oil-storage tanks were maintained in close proximity to the boundary line of defendant's premises and immediately adjoining a public highway on which plaintiff's trucks were standing; that there was also maintained on defendant's property a large open sump next to the storage tanks and directly opposite and within a short distance of an open fire on the Moore property; that the storage tanks and sump contained quantities of crude petroleum, and that the manholes of these storage tanks were uncovered. Also the evidence disclosed that crude petroleum when exposed to the air emits quantities of gas explosive in character. It was shown further that the night in question was foggy, with a wind velocity of about twelve miles per hour, and that a fog tends to hold gas close to the ground, and that such gas will travel with the wind. It is further disclosed by the record that the fire and explosion took place first upon the premises of defendant and that the spread of this fire caused the injuries to plaintiff.

We deem these facts ample to sustain the verdict. We content ourselves with thus stating the conclusion reached without citation at this place for the reason that all of the claims of appellant center around practically the same

theory, and as we progress with the discussion ample authority will support these first conclusions.

(2) The appellant claims the verdict is contrary to the evidence and the law. The basis of this contention appears to be that it was incumbent upon the plaintiff to have introduced evidence of what would have constituted the exercise of ordinary care on the part of the defendant, and then to have shown wherein defendant fell short of such standard. ■ Plaintiff in answer to this urges the doctrine of *res ipsa loquitur*. As this very same question is presented in the attack upon the instructions given on the subject we may pass this branch of the case for the moment and take up the questioned instructions.

(3) Error in giving instructions.

The court instructed the jury as follows: "When a thing which causes injury is shown to be wholly under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. The effect of the doctrine when applied to this case is that proof of the injuries to the plaintiff, provided such injuries are shown to have been caused through the explosion or ignition upon the defendant's property of crude petroleum located thereon, which property and which petroleum were under the exclusive management and control of the defendant, created a *prima facie* case or presumption of negligence on the part of the defendant, which it is called upon to meet or rebut. This presumption that the injury or damage was caused by the negligence of the defendant is itself a fact which the jury must consider in determining its verdict, and which, in the absence of any other evidence, and in the absence of contributory negligence, necessitates a verdict in favor of the plaintiff."

Two other instructions along the same lines are attacked by appellant, but the one quoted is deemed the one most objectionable by appellant, and it is unnecessary to here go into the others.

Appellant contends that the doctrine of *res ipsa loquitur* is not applicable to the present case, and urges many reasons for its contention. It is urged that to apply this

doctrine it must first be shown that the thing causing the accident is under the exclusive control of the defendant. And it is further argued that where the facts attending the injury are disclosed by the evidence the doctrine of *res ipsa loquitur* does not apply.

It is claimed that the real cause of the fire and explosion was the open fire under the boiler on the Moore lease, concededly not under the control of defendant and not on the premises of defendant. The obvious answer to this is that the record does not disclose this to be the fact. Throughout the trial of the case it was generally assumed that this open fire might in some way have caused the oil in the tanks to ignite, and as another theory it was possible that the gas lying close to the ground was carried over to this open flame and thus became ignited, and, spreading to the tanks, caused the explosion and general conflagration. This is but a theory in the case. The plaintiff's witnesses all seem to be in accord on the point that the fire started among the tanks, and the defendant's testimony was to the effect that the fire started out in the middle of the road near the truck of plaintiff, and that the explosion following was the result of the fire coming into contact with gasoline on plaintiff's truck. Nowhere in the record is there a single fact to indicate that the fire started on the Moore lease or that the fire on the Moore lease had the slightest connection with it. A careful reading of the entire testimony leaves the origin of the fire in darkest doubt. Several theories present themselves, but all in the face of testimony that the fire actually started between the tanks on the defendant's premises.

There is abundant testimony to establish the fact that conditions existing on the property of defendant were in themselves dangerous, as evidenced by the cautionary signs and warnings posted about the workings. There was always a constant menace from escaping gas, and the process of refinement or clarifying was such that gas was freely and often and in quantity emitted from the tanks, and that this gas was highly inflammable and susceptible to explosion. In addition to this there was the express testimony of expert witnesses called by defendant to the effect that an accident of this sort could happen only as a result of the

act of God or the negligence of some person. The accident is not attributed to an act of God as the phrase is generally employed. We think it to be a case where the doctrine of *res ipsa loquitur* has its true application. We content ourselves here with a citation of authority, omitting quotation therefrom for a reason to be hereafter stated: *Judson* v. *Giant Powder Co.,* 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020] ; *Rathburn* v. *White,* 157 Cal. 248 [107 Pac. 309] ; *Willard* v. *Valley Gas & Fuel Co.,* 171 Cal. 9 [151 Pac. 286] ; *Hallawell* v. *Union Oil Co.,* 36 Cal. App. 672 [173 Pac. 177].

The last point urged by appellant is error of the trial court in refusing certain instructions offered by appellant. At the trial appellant was permitted to introduce the testimony of expert witnesses on the subject of the general practice, usage, and custom among oil operators in the maintenance of their leases and appliances, equipment, and instrumentalities used in the production of oil for the purpose of showing that the defendant's properties were maintained and operated in a careful and prudent manner. In line with such testimony defendant requested specific instructions to the effect that if defendant adopted in its operation of the oil wells in question the same standard of equipment, tanks, pipes, etc., as was in common use in the Huntington Beach oil field, then such fact might be considered by the jury in determining whether or not defendant exercised ordinary care. Without detailing further the instructions requested and refused, the principle contended for is that if it had been shown that there was a general custom, practice, and usage amongst others engaged in the same business in the same locality, then such custom, practice, and usage constituted in themselves a standard of ordinary care and prudence, and in themselves would negative any inference of negligence.

We think the trial court committed no error in refusing to give these instructions. The jury were elsewhere sufficiently instructed on the subject. The duty and liability of defendant were in great detail explained to the jury, and nothing could be added to the court's charge by the instructions refused. This in itself is an all-sufficient answer to appellant's contention.

This practically disposes of the grounds urged here for a reversal of the judgment. There remains, however, one most important matter worthy of notice here.

This case was for the damages resulting to plaintiff while engaged in his employment as a truck driver. The owners of the trucks upon which plaintiff was employed at the time instituted a separate action to recover for the loss of the trucks. This action, to be accurate, was maintained by the insurance carriers and was entitled *Phoenix Assur. Co.* v. *Texas Holding Co.* On practically the identical facts the plaintiff recovered, and appeal was taken. The district court of appeal affirmed the judgment and the case is reported in California Appeals, volume 81, page 61 [252 Pac. 1082]. However, for the reason that throughout the opinion the district court assumed that the boiler and fire on the Moore lease were on the property of defendant and under its control, we have given the instant case independent consideration. In a petition for a hearing before the supreme court appellant pointed out this erroneous assumption of fact on the part of the district court, and went fully into the questions presented here; indeed, in many respects the briefs of appellant here are but copies of the authorities filed in the supreme court in the petition for a hearing before that court. The petition was denied; and so, therefore, to a great extent, irrespective of the fact taken against the record, the case now cited, viz., *Phoenix Assur. Co.* v. *Texas Holding Co.,* 81 Cal. App. 61 [252 Pac. 1082], concludes our further inquiry here.

As indicated hereinbefore, we have dismissed with little quotation of authority those points discussed in the previous case.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.