[Civ. No. 1489.   Second Appellate District.—May 29, 1914.]

HENRY N. VAUGHN, Respondent, v. FRED H. BIXBY et al., Appellants.

AGISTER—WHO IS—DUTY AND LIABILITY IN PASTURING HORSES.—One who takes in horses to pasture, having charge and control of them, is an agister; and while he is not an insurer against injury to or loss of the stock intrusted to his keeping, he is bound to take reasonable care thereof, and he is responsible for injury or loss resulting from ordinary casualties that could have been averted by the exercise of such care.

ID.—REASONABLE CARE—WHAT CONSTITUTES.—In such case reasonable care is that degree of care which it is presumed an ordinarily careful and prudent man would have exercised under the same circumstances with reference to his own stock.

ID.—QUESTION FOR JURY—REASONABLE CARE OF HORSES IN PASTURE.— Unless it can be said that the facts and circumstances established are such that reasonable men could reach but one conclusion therefrom, the question as to whether or not an agister exercised the required degree of care in looking after the welfare of horses while in his charge, is a question for the determination of the jury.

24 Cal. App.—41

ID.—CONCLUSION OF JURY—REVIEW ON APPEAL.—And even if there is no conflict in the evidence, nevertheless if the inferences fairly deducible therefrom are such that different conclusions might rationally be drawn therefrom by men equally sensible and impartial, the conclusion reached by the jury should be deemed final and not disturbed on appeal for want of sufficient evidence to justify the verdict.

ID.—WATER FOR HORSES IN PASTURE—NEGLIGENCE OF AGISTER IN SUPPLYING.—In this action by the owner of horses against the owners of some five thousand acres of mountainous land who had received the animals thereon to pasture for hire, to recover damages for the death of the horses through want of water, the evidence justifies the verdict of the jury in favor of the plaintiff.

ID.—SUFFICIENCY OF WATER IN PASTURE—SPECIAL AND GENERAL VERDICTS—CONSISTENCY.—A special finding of the jury that there was sufficient water in the pasture for the horses is not inconsistent with the general verdict for the plaintiff, if it is also found that the water was inaccessible to the horses.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. John W. Shenk, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, and A. D. Laughlin, for Appellants.

W. H. Dehm, and Constan Jensen, for Respondent.

SHAW, J.—Action to recover damages on account of negligence of defendants, resulting in the loss of certain horses placed in defendants' pasture.

The case was tried before a jury which rendered a verdict for plaintiff. Judgment followed, from which, and an order denying their motion for a new trial, defendants appeal.

It appears that defendants were the owners of some five thousand acres of inclosed, mountainous land, cut by deep cañons and gulches, which they used in the business of receiving stock for pasture thereon for hire; that plaintiff and his assignor, about the first day of May, 1912, delivered to defendants four horses to be pastured upon said lands. It is alleged that by reason of defendants' negligence during the time when said horses were in their possession and being pastured, they died for want of water.

The chief assignment of error is insufficiency of evidence to justify the verdict.

One who takes in horses to pasture, having charge and control of them, is termed an agister. (*Howard* v. *Throckmorton,* 59 Cal. 79; *Williams* v. *Miller,* 68 Cal. 290, [9 Pac. 166].) While he is not an insurer against injury to or loss of the stock intrusted to his keeping, he is bound to take reasonable care thereof, and injury or loss resulting from ordinary casualties that could have been averted by the exercise of such reasonable care constitutes negligence for which he is responsible. (*Williams* v. *Miller* 68 Cal. 290, [9 Pac. 166]; *Rey* v. *Toney,* 24 Mo. 600, [69 Am. Dec. 444]; *Halty* v. *Markel,* 44 Ill. 225, [92 Am. Dec. 182].) In this case reasonable care is that degree of care which it is presumed an ordinarily careful and prudent man would have exercised under the same circumstances with reference to his own stock. Unless it can be said the facts and circumstances established were such that reasonable men could reach but one conclusion therefrom, the question as to whether or not defendants exercised the required degree of care in looking after the welfare of the horses while in charge of them, was a question for the determination of the jury. Even if there be no conflict in the evidence, nevertheless, if the inferences fairly deducible therefrom are such that different conclusions might rationally be drawn therefrom by men equally sensible and impartial, the conclusion reached by the jury should be deemed final and not disturbed on appeal for want of sufficient evidence to justify the verdict. (*Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, [53 Pac. 651]; *Hoff* v. *Los Angeles Pacific Co.,* 158 Cal. 596, [112 Pac. 53].)

Applying this rule to the evidence disclosed by the record, we are clearly of the opinion that the evidence fully justified the verdict reached by the jury.

While not free from conflict, the evidence fairly tends to show that plaintiff and his assignor, who had never seen the pasture, delivered the stock to one of the defendants who, when he received the same, said: ''We will look after them, and put them where (there) is feed and water, and in the event the pasture becomes run down and the stock is not holding up, we will notify you and have you take them out.'' At that time said defendants requested plaintiff to notify them in advance before calling for the horses, in accordance with

which request plaintiff sometime in June, upon learning that the pasture was poor, wrote defendants and expressed his intention to remove the horses and not hearing from them, went there about July 1st, when he found three of the horses dead, two of them lying in a gulch at a point about fifty or one hundred feet from a pool of water therein, and the other upon a narrow, level plat of ground adjoining the gulch. At the place where the horses were found the gulch was eight or ten feet in depth, with perpendicular walls, by reason of which the horses were prevented from reaching the water otherwise than by climbing an abrupt hill or mountain and traveling a distance of some four miles and coming in on the other side of the gulch. By reason of the gulch and mountain, as well as other topography of the country, the place where the horses were found was something of a box cañon, out of which it appears they were unable to find their way. There was also evidence tending to show that the horses had been dead some ten days or two weeks, though there was evidence given on the part of defendants that they were seen at the point where their carcasses were found, on June 15th, when they appeared to be gaunt and in want of water, at which time one of the defendants drove them some distance to another spring, but afterwards on June 19th, he from a distance, but not going near, saw them at or near the same place from which he had taken them on June 15th when he thought they were in need of water, and where they had gone probably seeking the inaccessible water in the ditch. There was also testimony to the effect that defendants knew of the existence of the condition of this part of the pasture and had on occasions rescued stock which had been imprisoned in gulches therein; that it was the custom of those engaged in conducting like business to ride the range twice a week and if they missed seeing any of the stock contained in the pasture on one of these trips to look them up on the second ride. While plaintiff stated that he could not tell what the cause of death was, it is apparent that the jury concluded from the testimony that the horses had become imprisoned in this box cañon where their carcasses were found, and whence, it was reasonably apparent from the fact that all vestige of vegetation and brush had been eaten off, they had been unable to find their way out, and while there was water in the gulch

some eight or ten feet in depth they could not reach it; that two of them in an effort to do so had struggled or fallen into the gulch when too weak to regain their feet and remained there until death relieved their suffering.

In response to certain issues the jury rendered a special verdict wherein, among other things, they found there was sufficient water in the pasture for the horses. Appellants insist that the general verdict should be set aside and a new trial granted for the reason that the general verdict is predicated upon the fact that the horses died for want of sufficient water, and since the jury found specially there was a sufficient supply of water in the pasture for the horses, such finding must control the general verdict. This finding as to the sufficiency of water in the pasture, however, is limited by a finding made in response to the question: "Was the water in the pasture accessible to the horses described in the complaint as having died for want of water?" to which they replied: "No." The finding therefore as to the sufficiency of water in the pasture is qualified by the further finding that the water so found to be in the pasture was inaccessible to the horses, and hence is entirely consistent with the general verdict.

Some of the testimony given by witness Copeland, called on behalf of plaintiff, was incompetent. No objection, however, was made thereto and he was fully cross-examined thereon. After plaintiff rested his case defendants moved the court, without stating the ground therefor, to strike out all of his testimony, which motion was denied. The ruling was not error for the reason, among others, that since some of the evidence was proper the motion should have been directed to those parts of the testimony to which doubtless an objection would have been sustained had it been interposed.

We find no error in the record. The judgment and order are affirmed.

Conrey, P. J., and James, J., concurred.