[Civ. No. 7253. Third Dist. Sept. 6, 1946.]

N. H. MONROE, Plaintiff and Appellant, v. ROY OWENS et al., Respondents; FRANK McARTHUR, Cross-Defendant and Appellant.

John L. McNab and Charles Lederer for Appellant.

Curtiss E. Wetter for Respondent.

PEEK, J.—On March 31, 1944, appellants N. H. Monroe and Frank McArthur, doing business in the name of Corporation Ranch, owned or controlled, under government permits, extensive grazing lands in Lassen and Modoc Counties, and on that day entered into a written contract of agistment with respondents Roy and Elwood Owens, father and son, to pasture certain cattle belonging to the latter, including yearlings and cows, at a specified monthly rental. Among the provisions of the contract were the following:

"The parties of the first part agree to pasture all yearling steers and heifers in fenced fields on pasture lands under the control of the said Corporation Ranch [a fictitious name under which appellants were conducting a partnership or joint venture].

"It is further understood and agreed that all cows delivered to the parties of the first part shall be pastured in com-

mon with stock owned by the Corporation Ranch, either on lands owned by the Corporation Ranch, or upon public domain, and under grazing permits held by the Corporation Ranch.

"It is mutually agreed that the parties of the first part will at all times and at their own expense take proper care of said yearling steers, heifers, and cows, and shall keep said cattle on good feed and in a thrifty growing condition, and if at any time the parties of the second part shall decide that the feed available for said cattle is insufficient they shall have the right to purchase hay from the parties of the first part to feed said cattle, the price of said hay to be ten and no/100 dollars ($10.00) per ton, and may, at their option, keep said cattle on Corporation Ranch property until December 15th, 1944. If and when the parties of the second part shall decide that the feed on said range is insufficient for said cattle and shall begin to feed hay, as aforesaid, the cash pasture rental of one and 75/100 dollars ($1.75) per head shall terminate on such cattle as they determine shall be fed hay. The cost of feeding the above mentioned hay shall be paid for by the parties of the second part."

Pursuant to this contract, in May and June, 1944, respondents delivered to appellants for pasturage approximately 800 yearlings and cows. In the following months of November and January the animals were returned. When appellants rendered their bill in the amount of $7,969.15, representing the unpaid balance of the rentals due under the agreement, respondents refused to pay the same. Thereupon appellant Monroe, who had acquired by assignment all of appellant McArthur's right, title and interest in the contract, brought suit for the recovery of said amount, and respondents filed a cross-complaint against both appellants for damages in the sum of $10,000 for the depreciation in value of their cattle resulting from what was alleged to be improper treatment received at the hands of appellants. At the conclusion of the hearing the jury returned separate verdicts, one for appellants for the agreed rental of $7,969:15, the other for respondents for the damages sustained by them in the amount of $2,750, and separate judgments were rendered accordingly. This appeal is by plaintiff Monroe and cross-defendant McArthur from the judgment for respondents on their cross-complaint.

Appellants' first assignment of error is of a technical na-

ture and is based on certain testimony which showed that the cattle in question were not the joint or common property of both respondents but were made up of different groups some of which belonged wholly to one of the respondents and some wholly to the other, and that they were distinctively branded according to ownership. From this appellants argue that the case discloses a fatal failure of proof and a judgment which is defective because it provides for a joint instead of a several recovery.

We find no merit to the objection on either ground. With respect to the first, the allegation of ownership as contained in the cross-complaint is as follows:

". . . On the 31st day of March, 1944, the Cross-Complainants [respondents], Roy Owens and Elwood Owens, were the owners of 813 head of cows and yearling steers and heifers."

The contract, which was made a part of the cross-complaint and was also introduced in evidence, recites that all of the livestock which is subject thereto "is now owned by the parties of the second part [respondents]."

It is apparent that the above statements do not purport to describe the precise character of the ownership, and that they are not inconsistent with the proof of a several ownership, or with the conclusion that the respondents had a joint or joint and several right to performance under the contract. (See Civ. Code, §§ 1431, 1659.) On the other hand, appellants, by bringing their action for rentals against the respondents jointly and obtaining a joint recovery, have recognized respondents' obligation under the contract as a joint one, and they will not be heard to deny that the corresponding right is likewise joint.

 In the second place, under the general rule governing actions between bailor and bailee, the character of the title which respondents, as between themselves, had in the subject matter of the contract of agistment was not in issue (4 Cal.Jur. § 9, p. 13; *Brown* v. *Rowland,* 40 Cal.App.2d Supp. 825, 827 [104 P.2d 138]), and could not affect the sufficiency of the proof or the judgment.

 In the third place, the appellants have not been injured by reason of the joint form of the award, as a payment of the judgment will extinguish appellants' obligation to both respondents thereunder (Civ. Code, § 1475), and therefore they have no cause for complaint. (*De Arman* v. *Connelly,*

134 Cal.App. 173, 181 [25 P.2d 24] ; *Fairchild* v. *Bay Point etc. Ry. Co.*, 22 Cal.App. 328, 330 [134 P. 338].)

Next, appellants contend that the evidence is insufficient to show a breach of the contract. They argue that the extent of their obligation was to keep the cattle on good feed, and that, because the contract authorized respondents, if at any time they decided that the available feed was insufficient, to buy hay and have it fed to the animals at appellants' expense, their failure to do so constituted a waiver of the right to complain of the insufficiency of the feed.

In advancing this contention, appellants have failed to consider that the contract not only required that the cattle be given good feed, but also that proper care be taken of them generally and that they be kept in a thrifty condition. The proof was sufficient to warrant a finding that the defective condition of the animals was due to causes other than insufficient feed generally, such as the inadequacy or bad repair of the fences, thereby allowing the animals to stray, or the fact that appellants' own stock was run ahead of respondents' and permitted to consume the best feed. In other words, the respondents might have concluded, and the jury could have found, that there was sufficient feed available at all times but that appellants failed to make it accessible to respondents' cattle.

Again, waiver depends upon knowledge; and because of the scattering of respondents' stock, due to the fault of appellants and the large area covered by said ranch, it was difficult if not impossible for respondents to determine the precise condition of their cattle or of the feed available at the places they were grazing.

The record shows also that when respondents made complaint in particular instances, appellant Monroe would promise to remedy the condition, although he never did. To what extent respondents were justified in relying on such promises was a matter for the jury to determine, and not an appellate court.

Appellants' third assignment of error relates to the alleged insufficiency of the evidence to sustain the verdict and judgment on the question of damages. They do not contend that an incorrect rule for measuring damages was applied, nor do they maintain that the evidence was insufficient to show that substantial damage was caused by their negligent acts or omissions. Their sole ground of objection is the as-

serted uncertainty in the evidence relating to the amount of the damages sustained.

While a great deal of evidence was adduced to show that respondents were substantially damaged, the evidence as to the amount of the damages was less extensive. It consisted for the most part of testimony by Roy Owens that when stock is shipped to summer pastures it is not customary to weigh all of the cattle but merely to obtain averages; that cattle such as his, if kept in fenced fields, on good feed and in a thrifty growing condition, would have a normal gain during such a period of from 200 to 240 pounds per head; that cattle which he had grazing in another location and which he weighed in and out gained as indicated; that the stock pastured with appellants did not make a normal gain; that the cattle he did not weigh would average out at approximately the same figures as those which were weighed; that independent of weight the cattle were dried out and shrunken; that buyers do not want "drought cattle"; that if they did buy any they would pay from two to three cents per pound less than for cattle in good condition; that in the spring his cattle were worth 13 to 15 cents per pound; and that when they were returned they were worth only 11½ cents per pound although cattle were then selling for considerably more. Therefore, we are constrained to conclude that there is a tenable basis for the award of $2,750 given by the jury in this case. (See *McCargo* v. *Matul*, 73 Cal.App.2d 349, 351 [166 P.2d 297].)

The rules governing the sufficiency of the proof of damages, where damage appears, are not unduly exacting on the question of certainty.

Section 3300 of the Civil Code provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Section 3301 of the said code declares that "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Nothing is said as to amount.

The jury in this case was instructed that:

". . . Upon such failure the said cross-complainants would be entitled to such damages as would reasonably compensate

said cross-complainants for the failure of said cross-defendants to so reasonably pasture the yearling steers, heifers, and cows of said cross-complainants in the manner and during the period as herein set forth and described; said damages, if any, to be the difference of the market value, if any, of said yearling steers, heifers and cows, . . ."

It appears to be the general rule that, while a plaintiff must show with certainty that he suffered substantial damages by reason of the wrongful acts of defendant, once this has been done, certainty as to the precise amount of the damages is relatively unimportant. (25 C.J.S. § 28, pp. 493-496.)

It has been tersely said:

"Uncertainty as to the fact is fatal to recovery, but not uncertainty as to the amount. Many cases have recognized this distinction. . . ." (See Ann., 78 A.L.R. 858.)

In *Pye* v. *Eagle Lake Lumber Co.*, 66 Cal.App. 584, 588, 590 [227 P. 193], the court stated:

"In cases where substantial damage is shown where the amount is entirely uncertain or extremely difficult of ascertainment the sum to be awarded is a question for the jury in the exercise of a sound discretion. The fact that the full extent of the damages must be a matter even of speculation is not ground for refusing all damages. (17 Corpus Juris 756.)"

The foregoing case was one involving a breach of contract. In citing that decision, the Eighth Circuit, in the case of *Calkins* v. *F. W. Woolworth Co.*, (C.C.A. 8) 27 F.2d 314, 320, observed:

"While these rules have been more generally applied to torts, they also apply to actions for breach of contract, and a party who has broken his contract ordinarily will not be permitted to escape liability because of uncertainty as to the amount of damages resulting therefrom [citing authorities]."

In the case of *Storrs* v. *Los Angeles Traction Co.*, 134 Cal. 91, 93-94 [66 P. 72], an action for negligence in which the impairment of plaintiff's earning power was an element of the damages alleged, the Supreme Court, in holding that the evidence was sufficient to sustain a verdict for substantial damages—and to warrant an instruction relating to earning capacity—stated:

"The objection of the appellant, that, as there was no specific testimony that the plaintiff was earning anything at the time of the injury, or of the amount that he was capable of earning, any verdict of the jury under this instruction

would be merely conjecture, is untenable. . . . It needs no evidence to show that a plaintiff in full health and vigor, who has lost an arm or a hand by reason of the negligence of the defendant, has had his earning power greatly impaired, and in such a case a jury would not be limited to nominal damages, although there should be no evidence that he was in receipt of wages at the time of the injury, but would be authorized to give substantial damages [citing cases]. The rule for measuring damages is, however, the same, whatever may be the extent of the injury, but the measure of damages in any particular case will depend upon the facts in that case.''

The final objection raised by appellants to the proceedings herein relates to certain instructions given by the trial court based on general rules pertaining to the law of bailments and agistment. Both of these instructions appear to state the law correctly—the one, in regard to the shifting of the burden of proof where a prima facie case had been made for the bailor (4 Cal.Jur. § 24, p. 42; 3 Cal.Jur. 10-Yr.Supp. § 24, pp. 31-32; Ann., 23 A.L.R. 276-286; *Smith* v. *Maher,* 84 Okla. 49 [202 P. 321, 324 [23 A.L.R. 270] ; *Nutt* v. *Davison,* 54 Colo. 586 [131 P. 390, 391, 44 L.R.A.N.S. 1170]), the other, a ''formula'' instruction dealing with the rights and remedy of the bailor generally under his contract of agistment (*Mitchell* v. *Excelsior Water & Min. Co.,* 41 Cal.App. 240, 246-247 [182 P. 326] ; *Vaughn* v. *Bixby,* 24 Cal.App. 641, 643-645 [142 P. 100]). Appellants do not challenge the correctness of the instructions when properly applied, but maintain that this is not such a case. However, their sole reason for so contending is the provision in the contract which gives to respondents the privilege of buying feed for their animals if they determine that the feed available is not sufficient. We have heretofore considered this same argument when addressed to another question, and find it equally without merit as it is sought to be applied here.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.